## STATE v. E. C. JOYNER.

*Traffic in Liquor—Indictment—Constitutional Law.*

1. It is constitutionally competent for the legislature to prohibit the sale within a specified locality of intoxicating liquors not the manufacture of the vender.

2. An indictment under a statute which, in one section, unconditionally prohibits the sale of liquor in quantities less than a quart, and, in a subsequent section, interdicts all traffic in liquors not of the seller's own manufacture, need not aver that the liquor sold was not made by the defendant, when the offence charged is the sale of less than a quart.

3. An indictment, whether for a common law or a statutory offence, which does not conclude "against the peace and dignity of the state," is fatally defective.

(*Johnson* v. *Winslow*, 63 N. C., 552 ; *State* v. *Parker*, *ante* 531, cited and approved.)

INDICTMENT for Retailing Liquor, tried at Spring Term, 1879, of NORTHAMPTON Superior Court, before *Eure, J.*

The defendant was indicted in the following words : "The jurors for the state upon their oath present, that E. C. Joyner late of the county aforesaid at and in the county aforesaid, on the 20th day of March, 1879, unlawfully did sell to one A. H. Reid one pint of intoxicating liquor contrary to the statute in such case made and provided." The jury returned a special verdict, to wit, "the defendant sold to A. H. Reid in Northampton county on the 20th day of March, 1879, one pint of intoxicating liquor." And thereupon the court held that defendant was guilty ; judgment, appeal by defendant, whose counsel contended that the act under which the indictment was framed is unconstitutional.

*Attorney General,* for the State.

*Messrs. W. Bagley,* and *Reade, Busbee & Busbee,* for defendant.

SMITH, C. J. The defendant is charged with violating the first section of the local act of March 22nd, 1875 (Act 1874–'75, ch. 255, § 1), and the jury rendered a special verdict in which they find "that the defendant sold to A. H. Reid in Northampton county on the 20th day of March, 1879, one pint of intoxicating liquor," as specified in the bill of indictment. The court being of opinion that upon this finding the defendant was guilty, pronounced judgment, from which the defendant appeals. The points made in this court and strenuously contested for the defendant, relate, first, to the validity of the enactment, and secondly, to the sufficiency of the facts charged and found to constitute an offence under it.

The first and second sections of the act are as follows :

Sec. 1. That it shall be unlawful for any person to sell within Northampton county any intoxicating liquor by the measure less than one quart; provided nevertheless that nothing herein contained shall affect any retail license already granted by the county commissioners.

Sec. 2. That it shall be unlawful for any person to sell within said county any intoxicating liquor, other than that made by him or her.

The third section makes a violation of the act a misdemeanor punishable by a fine of " not less than thirty nor more than two hundred dollars."

It is apparent upon a proper construction of the statute, and to make the sections consistent, one with the other, that all traffic in intoxicating liquor, by the small measure less than a quart, is absolutely forbidden, and the selling in larger quantities is restricted to liquor which the seller himself manufactures. The act of selling by measure less than a quart, with which the defendant is charged, by whomsoever done, and wherein the liquor sold may have been made is under an unconditional prohibition. Consequently no neg-

ative averments in the bill are required and no additional facts need be found to constitute the offence.

The argument against the validity of the law, because of the discrimination contained in the second section in favor of the seller's own product, has no application to the general interdict found in the first. The discrimination is not against *citizens of other counties nor liquors elsewhere manufactured*, but every person residing in or out of the county is at liberty to sell and dispose of his own products, above the limited measure, in Northampton as in other counties. There are therefore no unequal and illegal distinctions in the act subject to condemnation under the constitution of the state or of the United States, and the learning contained in the argument for the defendant has no bearing upon the case.

But we do not concede that section two as interpreted by his counsel restrains this exercise of legislative power. The right of a state to regulate, or to prohibit wholly or in part the traffic in spirituous or intoxicating liquor has been asserted and sustained by repeated adjudications in the courts of the different states, and is recognized in numerous cases before the supreme court of the United States from the *License Cases* reported in 5 Wall., 452, down to the recent case of *Bartemeyer* v. *Iowa*, 18 Wall., 129, where it was contended that such restraints were imposed by the new constitutional amendments. "The weight of authority is overwhelming," says Mr. Justice MILLER delivering the opinion, "that no such immunity has heretofore existed as would prevent state legislatures from regulating and even prohibiting the traffic in intoxicating drinks with a solitary exception. That exception is the case of a law operating so rigidly upon property in existence at the time of its passage, absolutely prohibiting its sale as to amount to *depriving the owner of his property.*" The subject is discussed and the authorities cited and commented on by Judge COOLEY in his valuble treatise on Constitutional Limitations at page 583 and

following, and the competency of the state thus to legislate fully established.

But if the alleged repugnancy of the second section to the federal constitution did exist, it does not affect the validity of the preceding prohibitory clause, under which the indictment is framed. "When a part of a statute," says Judge COOLEY, "is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other," and they must be "*essentially and inseparably* connected in substance." *Ibid.*, 178. "An act may be constitutional in part and unconstitutional in part," say this court in *Johnson* v. *Winslow*, 63 N. C., 552. See also *Packet Company* v. *Keokuk*, 95 U. S., 80.

The law, local in its application, and clear and positive in its mandates, cannot be controlled by provisions and restraints found in similar enactments, general or special, passed for the regulation or prohibition of the traffic in other parts of the state, and must be enforced upon a fair and reasonable interpretation of its own terms. Nor is the competency of the legislature to pass local acts, such as the present, now an open question. The power has been so long and so often exercised and recognized in cases coming before this and other courts, that its existence must be considered as settled. For the reasons stated no negative averments in the bill are required and no evidence relating thereto was necessary on the trial. There were other technical exceptions taken to the form and sufficiency of the bill of indictment, of which we deem it only necessary to say that they are in our opinion untenable.

The absence of the usual concluding words of an indictment and its effect upon the bill, although not adverted to

in the argument, have not escaped the notice of the court and furnish an occasion for us to mark our strong disapprobation of the practice of making needless and unauthorized innovations upon old and well established forms. The framers of our state government inserted in its organic law a clause requiring in express words that "indictments shall conclude against the peace and dignity of the state." Const. of 1776, § 36. And such has been the invariable practice for more than a century past. In most of the state constitutions a similar mandate is found. 1 Whar. Cr. Law, § 410. And in some of them the courts declare that an indictment, drawn in disregard of this imperative requirement, is fatally defective. *Thompson* v. *Commonwealth*, 20 Gratt. (Va.,) 724; *Lennons* v. *State*, 4 West. Va., 755; *State* v. *Lopez*, 19 Mo., 254; *Anderson* v. *State*, 5 Pike (Ark.), 444.

In the latter case, SEBASTIAN, J., says: "This form derives no new consideration from its being found in the constitution ; such would have been the rule by the law without its insertion there. It was only declaratory and in affirmance of an old principle, and not a creation of a new one," and it is used he adds, " to indicate the sovereign power offended in the violation of law."

The clause is left out of the substituted constitution of 1868, and being now without written law on the subject we are confronted with the question of its materiality.

In 2 Hale's P. C., 188, it is said that " regularly every indictment ought to conclude *contra pacem domini regis*, for that is not taken away by the statute of 37 Henry VIII, ch. 8, and therefore "an indictment without concluding *contra pacem*, &c., is insufficient, though it be but for using a trade not being an apprentice, for every offence against a statute is *contra pacem*, and ought so to be laid." The same rule is laid down by Hawkins, with some exceptions not pertinent to the present case. 2 Haw. P. C., ch. 25, § 92.

The strictures of the rules of the common law, relating to

criminal proceedings, has been much relaxed by our own legislature, and an indictment is made sufficient in form for all intents and purposes, if it express the charge against the defendant in a plain, intelligible and explicit manner, so that sufficient matter appears to enable the court to proceed to judgment. Bat. Rev., ch. 33, § 60.

Again it is enacted that the want of certain usual technical averments, such as the words, "with force and arms" or "of any matter unnecessary to be proved," shall not constitute ground for staying or reversing judgment after conviction. *Ibid.*, § 66.

We have decided in *State* v. *Parker, ante* 531, that the omission of the words "of the state" would not vitiate the bill, and that by intendment they would in construction be supplied. But we do not feel at liberty to dispense entirely with words, declared by both Hale and Hawkins to be material, which have had a constitutional sanction since the foundation of the state government, until the change made in 1868. Whatever may be the proper construction and effect of the legislation referred to, it is manifest it did not cure this defect in the form of an indictment, made material by the constitution itself; and it ought not, since the change, to have any different or wider scope of application.

For the absence of this averment then the judgment must be arrested and it is so ordered.

PER CURIAM.          Reversed and judgment arrested.