The State v. Seidel.

---

No. 24,567.

THE STATE OF KANSAS, *Appellee,* v. A. A. SEIDEL, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Wrong Form of Verdict by Mistake Returned by Jury—Jury Retired and Returned Corrected Verdict—No Error.* When various forms of verdict in a criminal case are submitted to a jury, and by mistake they enter a verdict on one of these forms which apparently found the defendant guilty of a misdemeanor when it was obvious that if the jury were honest men they must have intended to find him guilty of a felony, it was not prejudicial error for the trial court to make reasonable comment and inquiry concerning the verdict; and when such comment and inquiry of the court elicited responses from the jury that they had written their verdict on the wrong form and that they did not intend to convict defendant of a misdemeanor only, it was not error to send the jury back to reconsider and correct their verdict; and when the jury retired and later returned a verdict of guilty of a felony as charged in the information it was not error to receive and enter such corrected verdict and to render judgment thereon.

2. SAME—*No Prejudicial Error in Record.* Incidents pertaining to the matters set forth in section 1 of the syllabus considered, and no prejudicial error discerned therein.

Appeal from Comanche district court; LITTLETON M. DAY, judge. Opinion filed April 7, 1923. Affirmed.

*H. R. Daigh,* of Ashland, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *C. E. Baker,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from the judgment of conviction of defendant as a persistent violator of the liquor law.

Defendant was prosecuted as a persistent violator on four felony

charges—(1) selling, (2) possession, (3) manufacturing, and (4) nuisance. Defendant's prior conviction of violating the liquor law was properly pleaded and clearly proved by record evidence, and there was no evidence to the contrary. In this action, the jury returned a verdict of guilty of a misdemeanor on the third count, although that verdict is not submitted for our inspection. However, it does appear that when it was rendered, the following matters transpired:

"The court said: 'Gentlemen, I can't object to your verdict, but I don't see how you could arrive at a verdict of that kind in view of the testimony that has been offered concerning a former conviction.' Thereupon some of the jurors said they had written their verdict on the wrong form; several of them said, 'We do not understand that this was a conviction for a misdemeanor only,' and thereupon they were sent back to the jury room to reconsider their verdict."

Later a verdict of guilty as a persistent violator was rendered by the jury on counts 2, 3 and 4.

Thereupon the following colloquy occurred:

"THE COURT: The former verdict you brought in here, I wish you would explain how you came to bring in that first verdict.

"MR. RINEY (foreman): Well, we overlooked the misdemeanor part of it. The persistent violator was the one we meant to give him.

"THE COURT: You meant to give him that in the first one?

"MR. RINEY: Yes, sir, and when we went back there was other things arose and we reconsidered the verdict all together.

"THE COURT: Do you agree, gentlemen, with what your foreman has said, all of you? (All answer in the affirmative.) Do you want to poll the jury?

(COUNSEL FOR DEFENDANT): "No, sir.

"THE COURT: The verdict you render now is the verdict of the entire jury, is it? (All answer in the affirmative.) Is there any objection to this verdict?

(COUNSEL FOR DEFENDANT): "We object to receiving this verdict at this time for the reasons the jurors have heretofore rendered a verdict in this case of guilty of a misdemeanor on the third count and no others; and for the further reason that the jury has been influenced by the remarks of the court at the time the first verdict was returned, and it has influenced them in reaching their second verdict.

"THE COURT: How is it, gentlemen, that you included in this second verdict guilty on counts two and four when you did not include it in your first verdict—you only included in your first verdict guilty on count three?

"MR. RINEY: Well, there was a misunderstanding. Some of them thought that included all of it, and when we went back that was the part that we disagreed upon. Some thought that that would include all of them, while others didn't.

"Q. This verdict that you now render is the unanimous verdict of the jury?

"Mr. Riney: Yes, sir.

"The Court: On those three counts, for making, having in his possession, and maintaining a nuisance?

"Mr. Riney: Yes, sir. (All other answers in the affirmative.)

"The Court: The objection is overruled. The verdict will be received and the jury is discharged from any further consideration of the case."

Judgment was entered and sentence imposed on defendant pursuant to the verdict on the third count only—that of making intoxicating liquors.

The defendant assigns error in the remarks of the court at the time the first verdict was returned, and in directing the jury to retire for further consideration and in receiving the second verdict. Error is also based upon the fact that when the trial court sent the jury back for further consideration it did not repeat its earlier instructions that the jury were the sole judges of the facts and that they were the judges of the weight and credibility to be given to the testimony of the witnesses.

Back in the time when a man was hung for stealing a sheep and monstrous punishment was imposed for any one of a hundred petty offenses, the irregularity above narrated would vitiate the verdict and judgment. The compassion of judges, enlightened in advance of their time, constrained them to insist on the strictest technical formality of every detail of procedure before they would perform the distasteful duty of imposing sentence as commanded by the rigor of the law. And so all sorts of trivial technicalities were seized upon and magnified into error of sufficient gravity to overthrow the verdict. In this humane age the cruel severities of the criminal law have been swept away, and resort to trivialities to defeat the law can no longer be countenanced. When the reason for a rule fails, the rule itself fails. Indeed, our modern criminal code forbids the disturbance of verdicts and judgments for mere irregularities through which no possible miscarriage of justice can be traced. (Crim. Code, § 293.)

In *The State v. Fleeman*, 102 Kan. 670, 171 Pac. 618, it was said:

"The code of criminal procedure was framed to supersede the common law with a more rational system. While it is defective in many respects, and in many others exhibits a conservatism which contrasts strongly with its general liberality, it is distinctively modern. The tradition of the common law, however, was so strong that it came near superseding the code. In time the code was rediscovered, and it is the purpose of the court to interpret and apply it according to its true intent and spirit." (p. 677.)

The State v. Seidel.

No error was committed by the trial court in its remarks when the first verdict was rendered. The first verdict was so absurd that the court might very well raise the question, in any dispassionate language, whether it could possibly be the one which any honest jury would intelligently render in view of defendant's prior conviction of an offense under the same law. The remarks of the court promptly elicited the fact that the jury had made a mistake, that the jury had gotten hold of the wrong form of verdict. Thus the court did what it was virtually bound to do, and sent the jury back to correct its mistake and to render the verdict it originally intended. (*The State v. Carrithers*, 79 Kan. 401, 99 Pac. 614; *The State v. Hammon*, 84 Kan. 137, 145, 146, 113 Pac. 418, and citations.)

There was neither need nor request that the jury be reinstructed that they were the sole judges of the facts and of the weight of the evidence, and its omission did not constitute error.

·The judgment is affirmed.

HARVEY, J. (concurring specially): I agree this case should be affirmed, but object to the opinion approving the criticism of the jury given by the trial court. It is improper in either a civil or criminal case for the court, after a verdict has been returned, but before it has been received, to seriously criticize the jury for what the court conceives to be a disregard by the jury of certain evidence in the case.

The appellant's abstract shows, that when the court made its criticizing remark "the jurors spoke up two or three of them at once and said, 'We didn't understand it that way. We picked up the wrong verdict and signed it and would like to have an opportunity to correct it.'" The court then asked the jury if that was true and they all answered in the affirmative and stated further that they had by mistake picked up the wrong form of verdict. This coming so spontaneously upon the inquiry of the court, and from several of the jurors, and being confirmed by all of them, conclusively shows that the verdict first signed was not the one agreed upon and was signed by mistake, and in that situation it was proper for the court to permit the jury to return to the jury room and sign the verdict which they really had agreed upon. From the attitude of the jury, no doubt the same thing would have occurred had the court simply asked the jury if the verdict rendered was their verdict and if they

were satisfied with it. Especially is this true in view of the fact that the former conviction had been clearly established, not even having been denied by the defendant when he was on the witness stand. I, therefore, base my affirmance of the judgment upon the fact that the record unmistakably discloses that the verdict first signed by the foreman and brought in was signed by mistake and was not the verdict which had been agreed upon by the jury. Thus I would overlook, but not approve, the inadvertent remark of the court.